## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHARLES THREADGILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03-CV-0735-CVE-FHM** |
| | ) | |
| **SOUTHWESTERN BELL TELEPHONE,** | ) | |
| **L.P., a Texas Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is the Motion for Summary Judgment and Brief in Support (Dkt. # 30) filed by defendant Southwestern Bell Telephone, L.P. ("SWBT"). SWBT moves for summary judgment as to plaintiff Charles Threadgill's claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., on the grounds that: (1) Threadgill has failed to establish a prima facie case of age discrimination; and (2) Threadgill has failed to demonstrate that SWBT's stated reasons for discharging him were pretextual. For the reasons below, the Court denies SWBT's motion.

## I.

Threadgill brought this action following the termination of his employment with SWBT on October 30, 2002. During his employment with SWBT, which began in 1973, Threadgill held a number of positions, including cable splicer helper, cable splicer, facilities engineer, and manager-engineer planning. During the time period in which the incidents at issue occurred, plaintiff held two management positions within the Construction and Engineering (C&E) division of SWBT. He occupied a first-line management position in the Tulsa Construction Management Center from February 2000 to November 15, 2001. From November 2001 to the date of his discharge, Threadgill

worked as a Manager-Engineer Design with a newly formed unit called the Facilities Analysis Planning ("FAP") group.  The FAP group is charged with identifying and resolving problems in particularly high cost areas in the states of Missouri, Oklahoma, Kansas, and Arkansas.  During the period in question, the FAP group was staffed by five engineers.  Four engineers, including Threadgill, were assigned to particular geographical areas, and the fifth engineer dealt with smaller projects throughout the entire region. While a member of the FAP group, Threadgill was responsible for "the Kansas Market," consisting of the state of Kansas and the Missouri portion of Kansas City. For most of the last two years of his employment with SWBT, Threadgill's direct supervisor was Karle Vahle, an area manager who was later placed in charge of the FAP group.  Vahle, in turn, reported to Dan McNeely, who was the director for C& E in the state of Oklahoma.  McNeely reported to Lorri Tener, the executive director for C&E.  It was Vahle who recommended plaintiff for a position in the FAP group, and McNeely approved that transfer.

In the spring of 2002, the Network Services organization, of which Oklahoma C&E is a part, declared an employee surplus in non-management and management positions, mandating a reduction-in-force.[1]  SWBT determined that the Oklahoma C&E organization had sixteen more managers than necessary.  Accordingly, the company developed an evaluation and ranking system to be used in deciding which of the 126 first-line managers working under Lori Tener would be affected by the reduction-in-force.

---

[1]    Plaintiff disputes defendant's characterizations of the reasons for the downturn in SWBT's financial status. In particular, he does not concede that the events of September 11, 2001 were a cause of the circumstances leading to the reduction-in-force.  This dispute is not relevant for the purposes of this motion, since Threadgill does not dispute the financial necessity of the reduction-in-force, only the manner in which it was carried out.

SWBT evaluated potentially affected managers on the basis of four criteria: performance, skills, experience, and training.  Managers could receive up to forty (40) points for performance: forty (40) points for those managers "exceeding expectations;" thirty (30) points for those managers "meeting expectations;" twenty (20) points for managers "meeting some expectations;" and ten (10) points for managers "not meeting expectations."

Managers could receive up to twenty-five (25) points for skills.   For management skills, including supervisory skills, effectiveness with others, getting to work on time, and managing their job and/or people effectively, a manager could receive up to ten (10) points: zero (0) points for those managers with problems with skills; five (5) for managers with average skills; and ten (10) points for managers with above average skills.  A manager who possessed above average technical skills could receive an additional five (5) points.  Finally, a manager who had demonstrated the ability to handle a broader scope of responsibilities and/or who was considered eligible for promotional opportunities could receive up to ten (10) additional points for skills.

In evaluating experience, supervisors could award ten (10) points for fifteen or more years of job-related experience or five (5) points for less than fifteen years of experience.  Managers could receive up to twenty-five (25) points for training: twenty-five (25) points for managers with a master's or Ph.D. degree and formal company training; twenty (20) points for a bachelor's degree and formal company training; ten (10) points for a trade/technical school/associates degree and formal company training; or five (5) points for managers with formal company training, but no degree.   Area managers responsible for assigning scores were instructed to total individual managers' scores and rank managers based on those total scores.  Managers with identical scores were ranked on the basis of seniority.

Based on a 2001 performance evaluation, Vahle assigned Threadgill twenty (20) points for performance, concluding that Threadgill's performance had been average as compared to his peers.[2] Vahle awarded Threadgill zero (0) points for skills, based on Vahle's assessment that Threadgill lacked interpersonal and technical skills above and beyond those required for the job and because Threadgill was not on the promotable list. In assessing Threadgill's skills, Vahle drew upon his own observations of Threadgill's interpersonal skills and reports he received from other managers. Threadgill received ten (10) points for experience and five (5) points for his training. Although Threadgill does not appear to object to the assignment of points on the basis of his experience and training, he vigorously objects to the appropriateness of his scores for performance and skills.[3]

After Vahle assigned points to the first-line managers under his supervision on the basis of the prescribed criteria, Threadgill received a total score of thirty-five (35) points. As a result of his score, Threadgill was ranked 120th out of 126 managers within the Oklahoma C&E organization. The sixteen lowest ranked managers, including Threadgill, were considered "at risk" for termination, unless they could be placed elsewhere in the company.

Of the sixteen at-risk, first-line managers, four were permitted to retain their jobs because other managers who were not at risk opted either to transfer to another location or terminate their

---

[2]      Instead of utilizing the 10-20-30-40 point grading system, Vahle assigned scores of 1, 2, 3, or 4, with a 1 awarded for performance "exceeding expectations," a 2 awarded for performance meeting expectations or "above average performance," a 3 for performance meeting some expectations or "average performance," and a 4 assigned for performance not meeting expectations or "below average performance." Plaintiff's Response to Defendant Southwestern Bell Telephone, L.P.'s Motion for Summary Judgment (hereinafter "Plaintiff's Response") (Dkt. # 33), at 5, ¶ 10. Vahle affied that he followed this scoring method at the direction of McNeely, his direct supervisor. These scores were later converted to the 10-20-30-40 scoring scale for the purposes of the Oklahoma-wide ranking.

[3]      Resolution of the disputed ratings is not necessary for the summary judgment ruling herein.

4

employment and receive severance.  Six at-risk managers chose to relocate to Texas.  Of those at-risk managers who transferred their employment, all six were over forty years of age.  Two at-risk managers, both under the age of forty, obtained new positions with SWBT in Muskogee and Tulsa.  The remaining four at-risk managers, who were all over the age of forty at the time, including Threadgill, were unwilling to relocate to positions outside of Oklahoma and subsequently lost their employment with SWBT.  Threadgill declined an opportunity to interview for a position in the Installation and Repair (I&R) organization in Hays, Kansas.  He also declined a position in an unidentified Texas location.  In both instances, Threadgill cited his desire to remain in Tulsa, near his daughter.  The parties do not dispute that if plaintiff had been willing to relocate to Texas, SWBT would have retained him.

On June 17, 2002, SWBT Area Managers met with at-risk managers to inform them of their status as "surplus" employees and to notify them that they had thirty days within which they could apply for other positions within the company.  Because Threadgill was on an approved disability leave, he did not receive formal notification that he was surplus, and he claims that he was unaware that he had the option of continuing employment while he sought other employment.  SWBT claims it provided plaintiff with additional time, until October 30, 2002, to pursue other employment with SWBT.

SWBT submits that when Vahle inquired into Threadgill's progress in acquiring other employment with SWBT, Threadgill informed him that he had applied for only one position: as Manager-Technical Support in the I&R organization in Tulsa.  Threadgill claims that Career Path, SWBT's job advertising system, was shut down during his thirty-day period to seek additional employment and that he was unable to apply for positions with SWBT as a result.  The parties agree

5

that Vahle spoke to the hiring manager, Mike Brawley, in the Tulsa I&R division and that Brawley informed Vahle that he did not consider Threadgill qualified for the position.

On August 1, 2002, prior to Threadgill's termination, SWBT transferred Timothy Scott, an engineer from Oklahoma City, into the FAP group.  As a result of his failure to obtain alternative employment within the SWBT organization, plaintiff lost his position with the company on October 30, 2002.   Upon Threadgill's departure, Scott eventually assumed responsibility for the Kansas market.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996).  "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Durham v. Xerox Corp., 18 F.3d 836, 838-39 (10th Cir. 1994)

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

SWBT moves for summary judgment on the dual grounds that Threadgill has failed to establish a prima facie case of age discrimination and that he has not submitted evidence of pretext.

The ADEA provides, in relevant part: "It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  By statute, the protections of the ADEA extend only to individuals who are at least forty years of age.  29 U.S.C. § 631(a).

Age discrimination claims brought pursuant to the ADEA are analyzed under the well-established burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981).

7

Branson v. Price River Coal Co., 853 F.2d 768, 770 (10th Cir. 1988) ("Cases brought under the ADEA are subject to the same indirect method of proof used in Title VII cases alleging discriminatory treatment."). Under this framework, a plaintiff must first make a prima facie showing of discrimination.   Once plaintiff establishes a prima facie case, a presumption of discrimination arises and the employer has the burden to produce a "legitimate, nondiscriminatory reason" for its actions.   Miller v. Eby Realty Group, L.L.C., 396 F.3d 1105, 1111 (10th Cir. 2005).  If the employer does so, the employee must prove that the employer's explanation is merely pretext for unlawful discrimination on the basis of age.   Id.

A plaintiff seeking to establish a prima facie case of age discrimination must establish four elements, the first three of which are relatively static across differing fact patterns.  The plaintiff must demonstrate: (1) he was a member of the protected age group, over forty years of age; (2) he was performing satisfactorily; and (3) his employer terminated his employment.   See, e.g., id. at 1111.  As to the fourth element, a plaintiff may either show that he was replaced by a younger worker or "produce evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."  Creason v. Seaboard Corp., 263 F. Supp. 2d 1297, 1307 (D. Kan. 2003).  Permitting this alternative showing of differential treatment, rather than replacement, accommodates plaintiffs who, in a reduction-in-force context, may not have been replaced because their position was eliminated.  See Branson, 853 F.2d at 771 ("In reduction-in-force cases, plaintiffs are simply laid off and thus incapable of proving actual replacement by a younger employee.").   There are, then, in effect, two theories of discrimination upon which a plaintiff may base his claim under the ADEA: the replacement theory or the differential treatment theory.  Threadgill takes a bifurcated approach to making his prima facie

8

showing, invoking both the replacement and differential treatment theories of discrimination.  None of the first three elements of the prima facie case is in dispute.  SWBT contends, however, that plaintiff cannot establish the fourth element of the prima facie case under either theory.

Threadgill claims SWBT replaced him in the FAP group with Timothy Scott, a SWBT engineer who, at the time, was thirty years of age.  The law governing whether an individual is "replaced" for the purposes of a prima facie case of age discrimination is highly fact-intensive.[4]  In certain circumstances, courts have declined to find a plaintiff was replaced when existing employees took over a terminated employee's responsibilities in addition to their own responsibilities.  See, e.g., Furr v. Seagate Tech., Inc., 82 F.3d 980, 988 (10th Cir. 1996) (finding that no replacement occurred when plaintiff's former responsibilities were divided up and absorbed by a four-person rotation of existing employees, and no new person took over his former responsibilities); Holopirek v. Kennedy and Coe, LLC, 303 F. Supp. 2d 1223, 1236 (D. Kan. 2004) (noting that plaintiff could not demonstrate she was replaced when no one was hired to replace plaintiff and duties were spread out among existing employees).  But see Conrad v. Board of Johnson County Comm'rs, 237 F. Supp. 2d 1204, 1253 (D. Kan. 2002) ("[I]t is sufficient for the purposes of the "replacement" prong of the prima facie case that some of plaintiff's job duties were taken over by the younger individual-- there is no requirement that the younger individual take over all of the plaintiff's former job

---

[4]      A plaintiff proceeding under a replacement theory of discrimination need not have been replaced by a younger individual outside of the protected class.  O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312 (1996) ("[T]he fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").  Plaintiff must be replaced, however, by someone "substantially younger."  Since Timothy Scott is approximately twenty years younger than Threadgill, the Court finds that, if Threadgill was replaced, it was by someone "substantially younger."

duties."). At least one Tenth Circuit case suggests that if an employee is transferred in from a separate division within a company to take over the responsibilities of a discharged employee, replacement has occurred. <u>MacDonald v. Delta Air Lines</u>, 94 F.3d 1437, 1442 (10th Cir. 1996).

Although SWBT vigorously rejects the claim that it replaced Threadgill with Scott, the evidence in the record raises a genuine issue of material fact as to this issue. Scott came into the FAP group in August 2002, following the announcement of the reduction-in-force. Plaintiff's Response (Dkt. # 33), Ex. 3, Affidavit of Karl Vahle, p. 7, ¶ 19. Scott was brought into the FAP group prior to Threadgill's departure and was trained to perform work within the group. Plaintiff's Response (Dkt. # 33), Ex. 4, Deposition of Karl Vahle, p. 40, ll. 7-23. In a performance evaluation completed on December 5, 2002, Scott possesses the job title once assigned to Threadgill, Manager-FAP Engineering. Plaintiff's Response (Dkt. # 33), Ex. 5, Timothy Matthew Scott Performance Evaluation. In that evaluation, Vahle writes of Scott, "When he moved to the FAP Center he was placed in the position of taking over projects from a surplus manager [who] was still in place." Plaintiff's Response (Dkt. # 33), Ex. 5, Timothy Matthew Scott Performance Evaluation. Moreover, the summary judgment record makes clear that Scott took over the work once done by Threadgill. In its motion for summary judgment, SWBT states, "Tim Scott, an engineer in C&E in Oklahoma City, was transferred to the FAP group on or about August 1, 2002 and eventually assumed, along with other job duties, responsibility for the Kansas market area previously assigned to plaintiff." Motion for Summary Judgment (Dkt. # 30), at p. 14, ¶ 28. Vahle provided consistent testimony:

> Q:    What happened at the end of 2002?
> A:    During that period, Mr. Scott assumed more duties and eventually took over
>       the duties for Kansas along with some other reorganizations and changes that
>       we did within the group.

10

Plaintiff's Response (Dkt. # 33), Ex. 4, Deposition of Karl Vahle, p. 47, ll. 2-6.

In the face of this evidence, SWBT insists that because Scott was an existing employee, Threadgill was not replaced.  It relies on two cases, <u>Furr v. Seagate Technology, Inc.</u>, 82 F.3d 980 (10th Cir. 1996), and <u>Ellison v. Sandia Nat'l Laboratories</u>, 192 F. Supp. 2d 1240 (D.N.M. 2002), in support of its claim.  There are important factual distinctions from those cases, however.  In <u>Ellison</u>, the court relied not only on the fact that the alleged replacements were existing employees, but also on the fact that one of the existing employees performed only two to three days worth of plaintiff's responsibilities, while the other existing employee performed only a portion of the work left behind by the plaintiff.  192 F. Supp. 2d at  1255.  In <u>Furr</u>, similarly, the plaintiff's remaining work responsibilities were parceled out to four existing employees, and no new employee took over his duties.  82 F.3d at 988.

Here, in comparison, the remainder of Threadgill's work with the FAP group was not distributed to the remaining four members of the group. Instead, SWBT transferred Scott, an engineer from outside the FAP group, from Oklahoma City to Tulsa, where he had to be trained to work in the FAP group.  Scott appears to have taken over the entirety of Threadgill's prior responsibilities, specifically, management of the Kansas market, and, unlike in <u>Ellison</u>, Scott occupied Threadgill's prior position permanently.  This evidence raises a genuine issue of material fact as to whether Scott replaced Threadgill in the FAP group.

The Court accordingly finds that Threadgill has made a sufficient evidentiary showing to withstand SWBT's motion for summary judgment on <u>prima</u> <u>facie</u> grounds.

## IV.

Having found that plaintiff has presented evidence supporting his prima facie case of age discrimination, the Court must evaluate the reasons offered by SWBT to explain the actions taken against Threadgill.  SWBT submits at least three reasons for Threadgill's ultimate termination: (1) the reduction-in-force mandating the elimination of certain managerial positions; (2) plaintiff's poor showing during the state-wide evaluation and ranking; and (3) plaintiff's unwillingness to relocate outside of Oklahoma.

Since SWBT has articulated nondiscriminatory reasons for Threadgill's discharge, Threadgill can avoid summary judgment only if he is able to show a genuine issue of material fact exists as to whether those articulated reasons were pretextual, Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1165 (10th Cir. 2000), or by presenting evidence that otherwise demonstrates an illegal discriminatory motive, Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1137 (10th Cir. 2000).  Pretext exists when an employer does not honestly represent its reasons for terminating an employee.  Miller, 396 F.3d at 1111.  A fact finder may infer discrimination only if a plaintiff produces evidence that the defendant's proffered explanation is pretextual and unworthy of credence.  Furr, 82 F.3d at 985.

While Threadgill does not take issue with the necessity of the reduction-in-force, Plaintiff's Response (Dkt. # 33), at p. 5, ¶ 8, he contends that SWBT has misrepresented the reasons for its decisionmaking during the reduction-in-force.  As part of his claim of pretext, plaintiff argues that although he was informed that his position was being eliminated, it was not, because Timothy Scott replaced him.

12

One way a RIF plaintiff may show pretext is to present evidence that, in fact, his job was not eliminated, but remained a single distinct position. Miller, 396 F.3d at 1112; Martin v. AT&T Corp., 331 F. Supp. 2d 1274, 1295 (D. Colo. 2004) (finding that defendant's statements that plaintiff's work was being phased out, when facts demonstrated that work was not phased out "lean[ed] slightly towards a showing of pretext."). The test for position elimination in the reduction-in-force context is not whether a plaintiff's former responsibilities [are] still performed, but rather whether the responsibilities still constitute a single, distinct position. Furr, 82 F.3d at 988.

In a "Surplus Notification Letter" dated September 10, 2002, Vahle informed Threadgill: "After a thorough and careful review, we have determined that, effective immediately, your current job position will be eliminated or consolidated with one or more other positions." Plaintiff's Response (Dkt. # 33), Ex. 1, Surplus Notification Letter. In its reply brief, SWBT maintains that it eliminated Threadgill's position. Defendant's Reply in Support of Defendant's Motion for Summary (hereinafter "Defendant's Reply")(Dkt. # 43), at p. 10. As the Court has found, however, there is sufficient evidence in the record from which a reasonable factfinder could determine that Threadgill's position was not, as SWBT claims, eliminated. The FAP group continued to service the state of Kansas following Threadgill's departure. Indeed, Timothy Scott assumed responsibility within the FAP group for operations within Kansas, occupying the position once held by Threadgill. For the reasons outlined above, the Court finds that the evidence provided by Threadgill creates a genuine issue of material fact as to the veracity of at least one of SWBT's reasons for terminating his employment, namely that his position was eliminated.

It is well-established in this circuit that evidence of pretext is sufficient to withstand summary judgment. "If the plaintiff succeeds in showing a prima facie case and presents evidence

13

that the defendant's proffered reason for the employment decision was pretextual-i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial." Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995); see also Stone, 210 F.3d at 1140; Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1165 (10th Cir. 1998).[5] This rule would seem to preclude summary judgment at this stage in light of the Court's conclusion with regard to SWBT's position elimination justification.   SWBT, contends, however, that even assuming, arguendo, that Threadgill's position was not eliminated, Scott scored better during the state-wide ranking of managers within the Oklahoma C&E organization, making Threadgill's replacement justified.

Although Tenth Circuit precedent makes clear that a showing of pretext may preclude summary judgment, it does not provide guidance on how to proceed at the summary judgment stage when a defendant offers multiple reasons for a termination decision and plaintiff offers reliable evidence of pretext as to only one of those reasons.  The Tenth Circuit's opinion in Miller, a recent ADEA case, provides some insight.  In Miller, the Court reviewed the district court's denial of a Rule 50 motion for judgment as a matter of law.  The defendant in Miller argued that the district court should have disregarded the plaintiff's evidence of pretext as to one of its reasons when it had offered additional reasons that plaintiff had not disproved. The Miller court, in response, expounded on the effects of a showing of pretext as to one reason on other nondiscriminatory reasons provided by a defendant.  Upon such a showing, the court explained, a factfinder

> is entitled to infer from any weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered reasons for its action

---

[5]      Though well-established, this rule is contested within the Tenth Circuit.  See, e.g., Beaird, 145 F.3d at 1176 (Tacha, J., dissenting) (noting that at the summary judgment stage, a plaintiff should be required to demonstrate pretext and provide evidence that is probative of the defendant's alleged discriminatory motive).

that the employer did not act pursuant to those reasons . . ., and we can see no reason to limit this inference to the specific proffered reason suffering from an inconsistency.  If the factfinder concludes that one of the employer's reasons is disingenuous, it is reasonable for it to consider this in assessing the credibility of the employer's other proffered reasons.

Miller, 396 F.3d at 1112 (internal citations omitted); see also Zaccagnini v. Charles Levy Circulating Co., 338 F.3d 672, 676 (7th Cir. 2003) ("Because a fact-finder may infer intentional discrimination from an employer's untruthfulness, evidence that calls truthfulness into question precludes a summary judgment.").

While the court in Miller addressed the sufficiency of the evidence underlying a district court's rejection of a Rule 50 motion, this Court understands the Tenth Circuit's statement in Miller to preclude summary judgment where a plaintiff presents evidence of pretext as to one of several explanations for a plaintiff's discharge.  Once a jury finds pretext as to one of defendant's reasons, it may then choose to draw inferences regarding defendant's credibility in determining whether to believe the other reasons submitted by a defendant.  See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant[--]particularly if disbelief is accompanied by a suspicion of mendacity[--]may, together with the elements of the prima facie case, suffice to show intentional discrimination.").  To grant summary judgment following a showing of possible pretext would be to foreclose the jury's opportunity to make the credibility determinations that are at the heart of its function.

Accordingly, the Court concludes that summary judgment would be inappropriate in the present case in light of Threadgill's evidence that one of SWBT's reasons for his discharge may have been pretextual.  The Court therefore holds that there is a genuine issue of material fact as to whether Threadgill's employment with SWBT was terminated because his position within the FAP

group was eliminated.  The Court further holds that a factfinder having rejected SWBT's claim that

Threadgill's position was eliminated could, accordingly, make a credibility determination regarding

the reliability of the other reasons offered by SWBT, including Threadgill's ranking relative to Scott.

 Miller, 396 F.3d at 1113.[6]

## V.

For the foregoing reasons, SWBT's motion for summary judgment (Dkt. # 30) is hereby

**denied** as to plaintiff's claim under the ADEA.

**DATED** this 8th day of September, 2005.

_Claire V Eagn_

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[6]     SWBT points out that the case Threadgill cites in support of his argument, Abuan v. Level
3 Communications, Inc., 353 F.3d 1158 (10th Cir. 2003), is not applicable because it is not
a reduction-in-force case.  Miller, however, is.