UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES THREADGILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03-CV-0735-CVE-FHM |
| ) | |
| SOUTHWESTERN BELL TELEPHONE, L.P., ) | |
| a Texas Corporation, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is Defendant's Motion to Reconsider and Brief in Support Thereof (Dkt. # 78). Defendant, Southwestern Bell Telephone, L.P. ("SWBT"), asks the Court to reconsider its Opinion and Order (Dkt. # 72) of September 8, 2005 denying defendant's motion for summary judgment. Plaintiff has not filed a response, nor is one required.

**I.**

Plaintiff brought this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., following the termination of his employment with SWBT in October 2002 during the course of a reduction-in-force. Defendant moved for summary judgment, claiming that plaintiff failed to set forth a prima facie case of age discrimination or, alternatively, that insufficient evidence of pretext existed to warrant jury trial. Specifically, defendant argued in its motion that the evidence of record could not support a finding that defendant maintained plaintiff's former position within SWBT's FAP workgroup and replaced plaintiff with Timothy Scott ("Scott"), another SWBT engineer, following the reduction-in-force.

This Court denied defendant's summary judgment motion in its September 8 Opinion and Order, holding that sufficient evidence existed in the record to create a genuine issue of material fact

as to one of defendant's proffered reasons for plaintiff's termination, namely, that plaintiff's position was eliminated during the course of the reduction-in-force. That evidence, the Court concluded, precluded the entry of summary judgment, since the Court could not reasonably predict how evidence of pretext as to one of defendant's proffered reasons would affect a jury's credibility determination as to the other reasons offered by defendant.

Defendant takes issue with the Court's conclusion and moves for reconsideration on the grounds that the Court's order: (1) ignores that Scott assumed plaintiff's job duties in addition to other job duties and, therefore, plaintiff's job duties did not remain a single, distinct position; (2) ignores that plaintiff was one of sixteen managers surplussed during the course of a legitimate reduction-in-force; and (3) is silent regarding defendant's "same actor" evidence.

**II.**

A Rule 59(e) motion to alter or amend the judgment, sometimes referenced as a motion "to reconsider,"[1] is warranted where there is (1) an intervening change in the controlling law, (2) new evidence previously unavailable, [or] (3) the need to correct clear error or prevent manifest injustice. Servants of the Paraclete v. Does I-XVI, 204 F.3d 1005, 1012 (10th Cir. 2000) (internal citation and quotation marks omitted). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. . . . It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."

---

[1] "The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.' Instead the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant to Fed. R. Civ. P. 60(b)." Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991). Since defendant's motion was filed within ten days of the adverse judgment, the Court construes it as a Rule 59 motion.

Id.  Absent extraordinary circumstances, the basis for the second motion must not have been available at the time the first motion was filed.  Id.

### III.

Defendant makes no attempt to place its request for relief within the confines of Rule 59 and provides no argument to support a claim that it has, in fact, presented evidence of new law, new facts, or a need to correct clear error or prevent manifest injustice.  Indeed, there is no reference to Rule 59 in defendant's motion.  Nevertheless, in an abundance of caution, the Court has reviewed, again, the entire summary judgment record.  It finds, as it did before, that a genuine issue of material fact exists as to defendant's insistence that it eliminated plaintiff's position in the FAP group.

As the Court observed in its original Opinion and Order and defendant correctly points out, "the test for position elimination is not whether the responsibilities were still performed, but rather whether the responsibilities still constituted a single, distinct position."  Furr v. Seagate Technology, 82 F.3d 980, 988 (10th Cir. 1996).  Upon review of the summary judgment record, the Court finds a genuine issue of material fact exists as to the status of plaintiff's former job position after his departure.

At the time of its summary judgment determination, the Court had before it voluminous evidence, some of which provided conflicting versions of the status of plaintiff's position within the FAP group following his departure.  Certain evidentiary materials support the claim made in defendant's Rule 59 motion that the position previously occupied by plaintiff became a conglomeration of plaintiff's and Scott's former job responsibilities.  During his deposition, Karl Vahle ("Vahle"), plaintiff's former supervisor, testified as follows with regards to plaintiff's former position within the FAP group:

3

> Q: What happened at the end of 2002?
> A: During that period, Mr. Scott assumed more duties and eventually took over the duties for Kansas along with some other reorganizations and changes that we did within the group.[2]

Plaintiff's Response to Defendant Southwestern Bell Telephone, L.P.'s Motion for Summary Judgment (hereinafter "Plaintiff's Response") (Dkt. # 33), Ex. 4, Deposition of Karl Vahle, at 47.

Affidavits from Daniel McNeely, another manager, and Vahle confirm this account. McNeely's affidavit states, "Tim Scott was transferred from his engineering position in Oklahoma City to the FAP group on or about August 1, 2002 and eventually assumed responsibility for the Kansas market area along with his other job duties." Defendant's Motion for Summary Judgment and Brief in Support (hereinafter "Defendant's Motion for Summary Judgment") (Dkt. # 30), Ex. 2, Affidavit of Daniel (Dan) McNeely, at 7. Likewise, Vahle's affidavit states, "Mr. Scott eventually assumed responsibility for the Kansas market area along with his other job duties." Defendant's Motion for Summary Judgment (Dkt. # 30), Ex. 3, Affidavit of Karl Vahle, at 7.

Other evidence appears to contradict defendant's claim, however. An entry in what appears to be a log maintained by Vahle, dated October 22, 2002, details one of Vahle's last meetings with plaintiff:

> Chuck had another question about his termination. . . . He asked if it made any difference because he was replaced. I explained that he was not replaced. There was not a job vacancy or any additional employees added in the district. There was a reduction in employees. After it was determined how many mangers there would be the management team met to determine what work needed to be redistributed. All necessary work still needed to be completed. That included some of the duties that Chuck performed. We gave those duties to an existing manager [Scott]. This

---

[2]  The Court notes that vague references to "more duties" and "some other reorganizations and changes" provide limited assistance to the Court in determining the question at hand.

manager was moved from another work group. His duties were divided among the managers in that work group.³

Defendant's Motion for Summary Judgment (Dkt. # 30), Ex. 3-R, Entry of Karl Vahle. This account stands in contrast to defendant's assertion in its motion to reconsider that Scott "eventually assumed responsibility for the Kansas market along with his other job duties." Defendant's Motion to Reconsider and Brief in Support (Dkt. # 78), at 3.

Additionally, a spreadsheet listing all of the members within the Oklahoma C&E organization includes a column entitled "Incumbent in Approved Location." The spreadsheet identifies sixteen "unapproved" locations, eleven of which were, at the time, occupied by "at-risk" managers in the C&E organization. The spreadsheet indicates, however, that plaintiff occupied an "approved" location. Plaintiff's Response (Dkt. # 33), Ex. 18, Human Resources Spreadsheet, at 4. This latter evidence raises a genuine issue of material fact as to whether defendant eliminated plaintiff's position within the FAP group. The Court in its previous Opinion and Order declined to decide this factual question and does so again. The question of whether defendant eliminated plaintiff's position and subsequently replaced him is a material fact inquiry appropriate for jury consideration. See Jones v. Barnhart, 349 F.3d 1260, 1265 (10th Cir. 2003) ("We recognize that at the summary judgment stage credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

---

³ This final sentence of Vahle's log entry is ambiguous as to the "his" reference and permits at least two interpretations: "his" relates to Scott or "his" relates to plaintiff. Thus, either Scott's responsibilities were divided among the members of his former work group in Oklahoma City or plaintiff's former duties were divided among the members of the FAP group. In either case, however, the statement conflicts with other testimony provided by defendant and demonstrates that a factual question exists as to the status of plaintiff's former job responsibilities.

A genuine issue of material fact exists as to one of defendant's proffered reasons for plaintiff's termination, namely the elimination of his position. For the reasons outlined in the Court's September 8 Opinion and Order, that evidence precludes summary judgment for defendant. Defendant's motion to reconsider (Dkt. # 78) is hereby **denied**.[4]

**DATED** this 5th day of October, 2005.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[4] Defendant points out that the Court failed to address its arguments relating to the "same actor" inference. The same actor inference does not negate all evidence of discriminatory intent; it only creates "a strong inference that the employer's stated reason for acting against the employee is not pretextual; [a] plaintiff still has the opportunity to present countervailing evidence of pretext . . . ." Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991). The Court's September 8 Opinion and Order did not address the same actor inference because it has no impact upon the ultimate determination reached by the Court. The jury, not this Court, must weigh any competing inferences raised by the evidence of the respective parties.